177 So.2d 380 (1965)
Cornell BENSON, Appellant,
v.
Stephen ATWOOD, and State Farm Fire & Casualty Company, a corporation, Appellees.
No. G-113.
District Court of Appeal of Florida. First District.
July 20, 1965.
Arthur T. Boone and William C. Guthrie, Jr., Jacksonville, for appellant.
Marion R. Shepard, of Mathews, Osborne & Ehrlich, Jacksonville, for appellees.
WIGGINTON, Acting Chief Judge.
This appeal is from a summary final judgment entered in a garnishment proceeding by which the writ of garnishment was dissolved and the garnishee discharged. Appellant was the plaintiff, Stephen Atwood was the defendant judgment debtor, and State Farm Fire & Casualty Company was the garnishee in the trial court proceedings.
It is appellant's contention that although there is little, if any, substantial conflict in the evidence, the trial court nevertheless committed error in rendering summary judgment in favor of the garnishee insurance company.
*381 On January 10, 1963, appellee Atwood, a member of the United States Navy stationed at Mayport in Duval County, owned a 1962 Pontiac automobile. His wife, Judith Atwood, called at the office of the garnishee insurance company's agent and signed an application for the issuance of an automobile liability insurance policy covering this vehicle. The policy issued in Atwood's name, was promptly delivered to and retained by him at all material times, and the premium thereon was paid for the ensuing six months period.
On January 16, 1963, Atwood applied to the garnishee agent for the issuance of an automobile liability policy covering a 1956 M.G. automobile also owned by him. As a result of this application a new insurance policy issued by the garnishee which extended liability coverage to both the Pontiac and M.G. vehicles. The premium charged for this policy was paid and the policy delivered to Atwood. No request for return of the original policy covering the Pontiac was made of the insured.
Thereafter, on February 26, 1963, Atwood's wife called on the garnishee's agent and signed an application for issuance of a liability insurance policy to cover a newly acquired Chevrolet automobile. On this occasion Atwood's wife informed the garnishee's agent that she wanted the insurance on the Pontiac transferred to the Chevrolet because she and her husband intended to sell the Pontiac. In response to this application the garnishee issued a new automobile liability policy covering only the M.G. and Chevrolet automobiles. Each of the insurance policies issued by the garnishee provided that before the policy could be effectively cancelled, written notice of such cancellation was required to be mailed to the insured Atwood ten days before the date of intended cancellation. When the garnishee issued its last policy covering only the Chevrolet and M.G. automobiles and thereby cancelling the coverage previously issued with respect to the Pontiac, no notice of cancellation of the insurance covering the Pontiac was mailed to the insured Atwood. Atwood testified that he never authorized his wife to cancel the insurance policy covering the Pontiac, did not know that she had done so until after the Pontiac was involved in a collision with a vehicle driven by the plaintiff Benson. His testimony is reasonably susceptible of the inference that at all times he assumed that the insurance policy covering the Pontiac continued in force and effect. At no time did the garnishee request the return of the policy previously issued by it covering the Pontiac and the M.G. vehicles.
On April 16, 1963, well within the six months period for which insurance coverage on the Pontiac was originally purchased by Atwood, the Pontiac collided with a vehicle owned and operated by the plaintiff Benson. As a result of this collision Benson sued Atwood and procured judgment for the damages suffered by him as a result of Atwood's negligence. Thereafter, Benson instituted this garnishment proceeding against garnishee, alleging that the garnishee was indebted to Atwood in the amount of the judgment secured against him by Benson under the automobile liability insurance policy issued to Atwood, which policy was in force and effect at the time of the collision. The garnishee, by its answer, denied that it was indebted to Atwood in any amount, and also denied that there was in existence at the time of the collision involving plaintiff's vehicle any automobile liability insurance issued by the garnishee to Atwood covering the Pontiac automobile. After Atwood's deposition was taken, requests for admissions of fact propounded to and answered by each of the parties were filed, the garnishee filed its motion for summary judgment supported by affidavits substantially attesting to the facts above related. Based upon the pleadings, depositions, exhibits, affidavits, and other matters appearing in the file, the trial judge concluded that there existed no genuine issue of any material fact, and held *382 that the garnishee was entitled to judgment as a matter of law.
In the summary judgment rendered in favor of the garnishee the trial judge held as follows:
"While Mr. Atwood did not expressly authorize his wife to transfer the insurance, it is clear that he permitted her to act as his agent in his dealings with the insurance company and that he clothed her with the apparent authority to effect the transfer of the insurance from the Pontiac to the Chevrolet. In addition, each of the policies here involved contains a provision for insurance on a newly acquired automobile and expressly provides for such insurance to be effective upon notice by the named insured or his spouse given to the company within 30 days of the acquisition of a newly acquired automobile. It necessarily follows that on the day of the accident there was no insurance available to the defendant Atwood with respect to the Pontiac automobile. * * *"
In order to sustain the summary judgment here reviewed the pleadings and evidentiary matters appearing in the record must establish without conflict that there is no genuine issue as to the following ultimate facts:
1. That the insured, Atwood, held out his wife, Judith Atwood, as his agent for the purpose of purchasing from the garnishee insurance company automobile liability insurance policies covering his several motor vehicles.
2. That in permitting his wife to act as his agent in the purchasing of automobile liability insurance covering his vehicles, Atwood clothed her with apparent authority to also (a) cancel the existing insurance policy covering his Pontiac automobile, and (b) to waive written notice of the cancellation of the insurance policy covering the Pontiac to which he was entitled under his insurance policy.
3. That even if Atwood did not clothe his wife with apparent authority to act as his agent in the cancellation of the insurance policy covering his Pontiac, or to waive notice of such cancellation, he nevertheless knew that the policy had been cancelled and ratified such act on the part of the garnishee.
From our examination of the file which was before the trial judge when he entered the summary judgment here assaulted, we conclude that the evidence, and reasonable inferences arising therefrom, create genuine issues of fact on which the minds of reasonable men may differ. We cannot agree that the evidentiary facts establish the foregoing ultimate facts with such degree of certainty as to entitle the garnishee to judgment as a matter of law.
That the insured Atwood constituted his wife as his agent for the purpose of procuring two of the three automobile liability insurance policies purchased by him appears to be conceded. This does not mean, however, that an agent clothed with the authority to purchase an insurance policy is, as a matter of law, also clothed with authority of the principal to cancel an outstanding policy, and to waive on behalf of the principal the written notice of such cancellation as required by the policy provisions. It is our view that this is a question to be decided by the trier of the facts after a full trial on the merits. As said by the Supreme Court in the case of Phillips v. Sanchez:
"* * * As a general proposition, the wife has no authority to bind the husband by contract unless she is his agent in fact. * * * This question of agency of the wife for the husband is not so much a question of law as of fact, provable as any other fact by circumstantial as well as positive evidence, with the burden resting upon the party alleging the agency. Of course, when the question *383 arises whether a particular contract was within the scope of her authority as agent, the question becomes a mixed one of law and fact. * * *"[1]
In the case of Florida National Bank of Orlando v. Bolena[2] the evidence was susceptible of conflicting inferences with respect to the apparent authority of the agent in that case to bind his principal. Under those circumstances a judgment based upon a directed verdict was reversed and the cause remanded for a new trial in order that the jury might decide the question of the agent's apparent authority to bind his principal by the agreement there in question.
The fact that there is no conflict in the evidence is not necessarily determinative of the party's entitlement to a summary judgment. In disposing of this proposition this court, in the Pan American Distributing Company case,[3] held:
"The basic question before us on this appeal, therefore, is whether there was before the court at the hearing on the plaintiff's motion for summary judgment sufficient competent, substantial evidence from which a jury could have lawfully found in favor of the defendant on its counterclaim against the plaintiff. It is, of course, immaterial whether the evidence is uncontroverted if the evidence is susceptible of two or more inferences of fact that could be lawfully made by a jury, one of which inferences would provide a basis for the jury to hold against the party moving for the summary judgment. * * *"
With regard to the issue of ratification the insured Atwood testified without dispute that he neither authorized his wife to cancel the insurance policy covering the Pontiac automobile, nor did he know that this policy had been cancelled until after the collision in which that vehicle was involved. This being the evidence that was before the trial judge at the time he considered appellees' motion for summary judgment, it can hardly be contended that Atwood ratified an act which he neither authorized nor of which he had knowledge.
It well may be that the trial judge placed supreme credence in the evidence tending to favor the position of the garnishee, and had little respect for the verity of the evidence tending to the contrary. In considering motion for summary judgment the trial judge is not privileged to weigh the evidence or pass upon the credibility of the witnesses. His judgment may not be influenced by the chances of success which he considers either party may have on the trial. When he strays from the narrow limits of his authority to determine only whether there exists any genuine issue of material facts in the case, he risks committing the transgression spoken of by Judge White for the Second District Court of Appeal in Nance v. Ball[4] when he said:
"Some cases are clearly disposable by summary judgment. There are also marginal cases posing colorable issues which the trial court may consider so weakly supported as to indicate the futility of a full hearing on the merits. In such a case, where adherence to the rule of caution results in a denial of summary judgment, the court may feel that there has been an unjustified extension of fruitless litigation. Our own experience attests an occasional impulse to amputate at once *384 rather than face the prospect of surgery by painful stages, but herein lies the occasional margin of error."
For the foregoing reasons we conclude the summary judgment here appealed was improvidently rendered. It is accordingly reversed and the cause remanded for further proceedings consistent with the views expressed herein.
STURGIS and CARROLL, DONALD K., JJ., concur.
NOTES
[1] Phillips v. Sanchez, 35 Fla. 187, 17 So. 363, 364.
[2] Florida National Bank at Orlando v. Bolena (Fla.App. 1959), 110 So.2d 436.
[3] Pan American Distributing Company, a corporation v. Sav-A-Stop, Incorporated (Fla.App. 1960), 124 So.2d 753, 756.
[4] Nance v. Ball et al. (Fla.App. 1961), 134 So.2d 35, 37.